## KINGSLEY v. HOLBROOK.

An agreement for the sale of growing trees, with a right to enter on the land at any future time and remove them, is a contract for the sale of an interest in lands, and, to be valid under the statute of frauds, must be in writing.

Under chapter 130 of our Revised Statutes, the conveyance of such real estate must be under seal to be valid even against the grantor and his heirs.

The distinction on this subject is between growing trees, grass and other natural products of the earth, on the one hand, and growing crops of grain and other annual productions raised by industry and the cultivation of the earth, on the other. The former are parcel of the land, and a conveyance in writing and under seal is required by our law to transfer the interest in them; while the latter are personal chattels and may be conveyed without deed or writing.

But growing trees may be severed in law from the land and become personal property, without any actual severance, as where the owner of the fee in the land by a valid deed sells the trees to a third person, or sells the land reserving the trees. In both these cases the trees become chattels personal, distinct from the soil, and then they go to the executor and not to the heir, and they may then be transferred by parol.

TROVER, for 50 cords of pine saplings of the value of $200, and 40,-000 feet of pine logs valued at $300. Upon the general issue it appeared that the timber in question grew on land, owned in 1856 by S. Holbrook, since deceased, and the defendant, and by the defendant alone since 1860.

On the first of October, 1856, the defendant and S. Holbrook made a conveyance of this timber to A. H. Conant. The deed was substantially as follows :

Know all, &c., that we Samuel Holbrook and Son, of, &c., in consideration of $850 paid by A. H. Conant of, &c., do hereby sell and convey to said A. H. Conant, all the pine timber on a certain piece of land belonging to said Holbrook & Son, (described.)
Signed,

SAM. HOLBROOK,          (Seal.)
HENRY HOLBROOK, 2d,      (Seal.)

This deed was duly acknowledged, but not witnessed.
Upon the back of this deed were the following assignments :

I hereby sell, deliver, and transfer the within named parcel of pine timber to Robert W. Pratt, with all the privileges belonging to me in the same, no more, no less.

ASA H. CONANT.

W., Jan. 25, 1861.

For and in consideration of $200, I hereby sell, deliver, and transfer the within piece of pine timber to Alonzo Kingsley, with all privileges belonging to me.
Jan. 28, 1861.                                        R. W. PRATT.

The magistrate, who wrote the deed from S. Holbrook & Son, at the same time, and as a part of the same transaction, drew up another instrument on a separate paper, in substance as follows :

S., Oct. 1, 1856.   This instrument witnesses that I, Asa H. Conant of, &c., having purchased a lot of standing pine timber of Sam. Holbrook & Son of, &c., do agree to and with said Holbrook & Son, that I will cut and remove all the said timber from the land on which it now stands, within three years from the date hereof, and in failure whereof so to do, I agree to forfeit all the said timber, left upon the land where it now is, at the expiration of three years from the date above.

S. B. NELSON, for

A. H. CONANT.

This writing was signed and delivered to the Holbrooks at the same time, by S. B. Nelson, who appeared and transacted the whole business, as the agent of Conant, in his absence, and was authorized to transact business in his name, but not to contract debts or sign notes in his name.

There was evidence tending to show that the assignees, Pratt and Kingsley, had been informed that there was a writing between Conant and Holbrook by which the timber would be forfeited if it was not removed from the lot within three years; that both were informed by Conant before the assignments, that Holbrook said he had such a writing, though he said Conant did not regard it as valid, because Nelson had no authority to sign such a paper for him; and Pratt, before his purchase, was told by Holbrook himself, that the timber was forfeited.   It did not appear that either of the assignees made any enquiries of Holbrook, though they lived in the next town, and within a few miles of Holbrook who resided near the timber, nor of any other person, as to the particulars of that writing.

The jury was instructed, that, on the face of the deed to Conant, he had an unincumbered title to the timber, and his assignees, if they purchased of him in good faith, and for good consideration, without notice of any forfeiture, would take a good and unqualified title.   But that Conant was bound by the writing signed by Nelson, since he could not avail himself of a contract made by one who assumed to act as his agent, whether with or without authority, so far as it was in his favor, and repudiate the rest; he must take it as it was made.   That the writing signed by Nelson, though on a separate paper, and not under seal, was a good and sufficient defeasance of the deed of the timber, to bind Conant and any assignees of his, who had notice of it.   That actual knowledge of it was not necessary.   That every person, who had such information in relation to it, as ought to put a reasonably careful and attentive man upon inquiry, must be taken to know all that he would have learned by reasonable inquiry.

The plaintiff introduced evidence tending to prove, that, in 1857 or '58, upon the application of Holbrook, who was anxious to have a portion of the land cleared, Conant, though unwilling to have the timber cut then because the price was low, agreed to employ Holbrook to cut and haul off the timber on that part of the lot at a certain price, and Holbrook agreed with him, on that consideration, to extend the time for

cutting the residue for one year after the time agreed in the original bargain ; and Holbrook accordingly cut this timber.

The next year, in winter of 1859–60, Conant, upon a like application, employed Holbrook to cut off another portion of the timber, and Holbrook, on that consideration, agreed to extend the time of cutting the residue another year, or till another winter. The witness Conant testified, that, according to his best recollection, the agreement was that the timber might stand till another year, and that he told Pratt, when he sold to him, to be sure to get off the timber that winter, 1861.

The defendant introduced evidence, tending to prove, that, in January, 1861, before Pratt purchased, he agreed with Holbrook, if he bought, to put on teams enough the next week to get off the timber in two weeks after, while the evidence tended to show, that, in the same conversation, Holbrook told Pratt, he should have the same privilege Conant had to get the timber off that winter, and that he must have it taken off in season to clear and burn over the land, and get in a crop. It appeared that Holbrook commenced on the first day of March, 1861, and cut off the whole remaining timber, with a few [exceptions, before the 20th of March.

The defendant requested the court to instruct the jury that no waiver of the time for getting off the timber, and no agreement to extend the time, would be binding, unless made in writing, and signed by the party sought to be charged ; that the time limited for getting the timber by the original written contract, having expired, the property in the timber was vested in the defendant, and any agreement to extend the time, afterwards made, would be a mere parol license, revocable at the pleasure of the defendant, and not transferable ; and that the new agreements attempted to be shown, were without consideration, and not binding. But the court declined to give such instructions, and did instruct them, that, although there was a written agreement that the timber should be forfeited if not taken off within three years, yet the parties might modify their contract by a verbal agreement, and waive the forfeiture, either absolutely, or perhaps for a limited time, and if the parties agreed that the time of cutting should be extended through the winter of 1861, or till October of that year, by one or more bargains to that effect, the timber would not be forfeited at the end of three years, nor till the end of the extended time, (the first of such agreements having been made before any forfeiture had occurred ;) and that, in the same manner, the time once extended to Conant till the winter, or 1st of October, might be reduced by a new agreement with Pratt ; that the agreements stated by Conant were made upon a sufficient consideration, if they relied on his testimony, and that the assignments to Pratt and Kingsley were good and sufficient to convey to them all the rights to the timber, which Conant had, either by virtue of the original writings, or by virtue of any modifications by verbal agreements made afterwards.

The court ruled that the plaintiff Kingsley might be asked, if he made enquiries of Pratt, his assignor, as to the condition of forfeiture of the timber, and what answers he received, the defendant's counsel contending that he was bound to go to Holbrook, who held the writing.

To these rulings and instructions, exceptions were specifically taken.

The jury found a verdict for the plaintiff; and the defendant moves it may be set aside on these exceptions; and the questions, arising in the case were reserved.

*Lane*, for defendant.

The instruments executed by the parties in this case constitute one contract. 1 Greenl. Ev. sec. 268.

1. This action cannot be sustained on the original contract, because the rights of the plaintiff, under that contract, had expired by limitation of time. He bought only what timber he should cut within three years. *Putney* v. *Day*, 6 N. H. 430; *Olmstead* v. *Niles*, 7 N. H. 522. It was an estate for years, and had as effectually expired as any estate for years, by the expiration of its time; or, as an estate for life, by the termination of the life on which it depended.

2. It cannot be sustained on oral evidence, for that is in conflict with the statute laws of the State. And the fact, that there had been a written contract relating to the same matter, cannot, by any arts of speech or process of reasoning, confer upon a verbal contract, afterwards made upon the same subject, any new or different character, than if such written contract had not been made. Comp. Statutes. ch. 191, sec. 8; Ib. c. 1, sec. 17; *Goucher* v. *Martin*, 9 Watts 106; *Espy* v. *Anderson*, 2 Harris, 303; *Cravener* v. *Bowser*, 4 Barr. 259; *Moor* v. *Campbell*, 10 Exchequer, 325; *Goss* v. *Lord Nugent*, 5 B. & Ad. 58; *Stead* v. *Dawber*, 10 A. & E. 57; 2 Leading Cases in Equity, 690—1.

3. This case does not present a state of facts where the principles and doctrine of waiver, in their ordinary signification, can be applied. His estate under the written contract by which it was created, had ceased; and what is called a waiver could be nothing more than a license to take the timber, which would be revocable at pleasure, before it was executed. It could confer no rights binding upon the defendant, before it was executed. If the instructions of the court relating to the verbal contracts, and the waiver of rights by the defendant, are correct, then a party might acquire an interest in real estate for a hundred years by a verbal agreement, transferable at his pleasure. This we think is not the law. *Marston* v. *Gale*, 24 N. H. 176; *Cowles* v. *Kidder*, Ib. 364; *Batchelder* v. *Sanborn*, Ib. 475; *Whittemore* v. *Gibbs*, Ib. 485; Comp. Statutes, 290, sec. 12; *Ruggles* v. *Lesure*, 24 Pick. 187.

4. There was no consideration for the verbal contract with either Conant or Pratt, and especially with the latter.

5. Under the circumstances disclosed in this case, the assignees should have made enquiries of Holbrook in relation to the terms of the writing which he held, or else be bound by them. *Warren* v. *Swett*, 31 N. H. 332; *Rogers* v. *Jones*, 8 N. H. 264.

*Wheeler & Faulkner*, for plaintiff.

1.   If the original contract between Conant and Samuel Holbrook &
Son, was a sale of an interest in lands, Conant and his assigns took an
unincumbered title to the timber.   The condition of forfeiture not being
inserted in the conveyance was void.   N. H. Comp. Laws, p. 290, sec.
2; *Lund* v. *Lund,* 1 N. H. 39; *Runlet* v. *Otis,* 2 N. H. 167; *He-
bron* v. *Centre Harbor,* 11 N. H. 571.   If this view is sustained it is
decisive of the case, and it may be unnecessary to examine other ques-
tions raised; but, whether sustained or not, the defendant has no ground
for complaint, as the ruling of the court on this point was sufficiently fa-
vorable to him.

2.   If the original contract was a sale of an interest in lands, neith-
er of the subsequent contracts was such.   A written agreement may
be waived by a new verbal contract, even if the original agreement was
within the statute of frauds, or under seal.   *Munroe* v. *Perkins,* 9
Pick. 298; *Cummings* v. *Arnold,* 3 Met. 486; *Stearns* v. *Hall,* 9
Cush. 31; *Willard* v. *Henry,* 2 N. H. 120; *Deming* v. *Comings,*
11 N. H. 474; *Batchelder* v. *Robinson,* 6 N. H. 12; *Leighton* v.
*Shapley,* 8 N. H. 359; *McNeil* v. *Call,* 19 N. H. 403; *Gould* v.
*White,* 26 N. H. 178; *Walton* v. *Kingsley,* Cheshire, July Term,
1860.   By the original agreement Conant became the owner of the tim-
ber, subject to a liability to forfeiture in case it were not removed with-
in three years.   That condition being in favor of the defendant might
be waived by him either absolutely or for a limited time.   Before the ex-
piration of the three years, and while the trees were still the property of
Conant, the defendant, for a valuable consideration, agreed to waive the
forfeiture for a limited time.   This agreement transferred no property
or interest in lands from one party to the other, nor was it a license to
do an act upon the lands of the defendant; it was a mere waiver of the
forfeiture, and required no writing.

3.   The sale of standing timber to be speedily removed from the land
is not a sale of an interest in lands.   The cases cited from our reports
are cases in which the timber was to stand upon the land for a long term
of years, and a profit was to be derived by the purchaser from their re-
maining upon the land.   The true criterion, where anything physically
annexed to the freehold is sold, is the intent of the parties.   If they con-
templated a beneficial use of the land, as, in the case of a sale of trees,
a profit from the growing surface, it is a sale of an interest in lands,.
otherwise not.   2 Parsons on Contracts, p. 314, 315; 1 Greenl. Ev.
sec. 2; 4 Kent's Com. p. 450–51, note; 1 Lord Raymond, 182; *Claf-
lin* v. *Carpenter,* 4 Metcalf, 580; Chitty's Con. 300, 302; *Mayfield*
v. *Wadsley,* 3 B. & C. 364; *Smith* v. *Surman,* 9 B. & C. 561;
*Sainsbury* v. *Matthews,* 4 M. & W. 343; *Bostwick* v. *Leach,* 3 Day
476; *Hallen* v. *Runder,* 1 C. M. & R. 266; *Erskine* v. *Plummer,* 7
Greenl. 447; *Kent* v. *Kent,* 18 Pick. 569; *Nettleton* v. *Sikes,* 8 Met.
34; *Nelson* v. *Nelson,* 6 Gray, 385, *Douglas* v. *Shumway,* 13 Gray,
498.

4.   The plaintiff had a right to show what enquiries he made in re-
gard to any incumbrance or defect in his title.   One step in making this
proof was to show that in the first instance he made enquiry in the prop-

er quarter and the information he received. If the court had ruled that sufficient enquiry was made by the plaintiff, an exception might be sustained; but no such ruling was made.

SARGENT, J. In Massachusetts and Maine and some other States, the courts have held, as stated in 1 Greenl. Ev. sec. 271 and note, that a sale of trees growing upon land is not a sale of real estate, unless it is contemplated that they shall remain so as to receive profit and growth from the growing surface of the land; unless the vendee was to have some beneficial use of the land in connection with the trees. Where such is the case, then a sale of standing trees is a sale of an interest in land, otherwise not. The authorities cited in the plaintiff's brief are in favor of the same view.

This doctrine had its origin, as it would seem, from 1 Ld. Raymond, 182, where *Treby, C. J.* reported to the other judges that the question had arisen before him at *nisi prius,* whether a sale of timber, growing upon land, ought to be in writing by the statute of frauds, or might be by parol; and that he had ruled that it might be by parol, because it is but a bare chattel; and it is said that to this opinion *Powell, J.* agreed. Since then the decisions have been very conflicting both in England and in this country. Many decisions in regard to growing crops are quoted as bearing upon the question as to whether growing trees are to be considered personal property, or an interest in land. These decisions are no less conflicting, however, and aid us very little in establishing any general rule based upon principle.

But we find this distinction noted in *Dunne* v. *Ferguson,* cited in Stephens, N. P., 1971, from 1 Hayes (Irish) R. 542. The case was trover for turnips. In October 1830, the defendant sold to the plaintiff a crop of turnips which he had then recently sown, for a sum less than ten pounds. During the winter following and while the turnips were still in the ground, the defendant severed and carried away considerable quantities of them which he converted to his own use. No note in writing was made of the bargain. It was contended for the defendant, that trover did not lie for things annexed to the freehold, and that the contract was of no validity for want of a note or memorandum in writing, pursuant to the statute of frauds.

In deciding the case JOY, *Chief Baron,* (Barons Smith, Pennefeather and Foster concurring,) says: "The general question for our decision is, whether there has been a contract for an interest concerning lands within the second section of the statute of frauds; or whether it merely concerned goods and chattels; and that question resolves itself into another, whether or not a growing crop is goods and chattels. In one case it has been held that a contract for potatoes did not require a note in writing because the potatoes were ripe; and in another case the distinction turned upon the hand that was to dig them, so that if dug by A. B. they were potatoes, and if by C. D, they were an interest in lands. Such a course always involves the Judge in perplexity and the case in obscurity. Another criterion must therefore be had recourse to; and, fortunately, the later cases have rested the matter on a more rational and

solid foundation. At common law growing crops were uniformly held to be goods, and they were subject to all the leading consequences of being goods, as seizure in execution, &c. The statute of frauds takes things as it finds them, and provides for land and goods according as they were so esteemed before its enactment. In this way the question may be satisfactorily decided. If before the statute a growing crop has been held to be an interest in lands, it would come within the second section of the act, but if it were only goods and chattels, then it came within the thirteenth section. * * And, as we think that growing crops have all the consequences of chattels and are, like them, subject to be taken in execution, we must rule the points saved for the plaintiff."

Growing annual crops for many purposes are, and always have been, considered chattels. They go to the executor upon the death of the owner of the land, and not to the heir, and they may be levied on and sold upon execution like other personal chattels. And this being the case when the statute of frauds was enacted, they continued to be so treated and may properly be so now. But the word *land* is a comprehensive term including standing trees, buildings, fences, stones, and waters, as well as the earth we stand on, and all pass under the general description of land in a deed. Standing trees must be regarded as part and parcel of the land in which they are rooted and from which they draw their support, and, upon the death of the ancestor, they pass to the heir, as a part of the inheritance, and not to the executor, as emblements, or as chattels. Neither can they be levied upon and sold on execution, as chattels, while standing. This being the case when the statute of frauds was passed, it has since then been properly held, we think, that a sale of growing trees, with a right at any future time, whether fixed or indefinite, to enter upon the land and remove them, does convey an interest in the land. It has been so held in this State, *Putney* v. *Day*, 6 N. H. 430; *Olmstead* v. *Niles*, 7 N. H. 522; and more recently in other States, *Green* v. *Armstrong*, 1 Denio, 550; *Warren* v. *Leland*, 2 Barb. S. C. 614; *Pierpont* v. *Barnard*, 5 Barb. S. C. 364; *Dubois* v. *Kelley*, 10 Barb. S. C. 496; *Buck* v. *Pickwell*, 27 Vt. 157; *Yeakle* v. *Jacob*, 33 Penn. St. R. 376. Also in England, *Scorell* v. *Boxall*, 1 Younge & Jer. (Ex.) 396; *Teal* v. *Auty*, 2 Brod. & Bing. 99.

I think, therefore, that, upon the weight of authority and upon reason, the doctrine early established in this State, that a sale of growing timber is ordinarily a sale of an interest in land, is sound and ought to be sustained. Our statute, providing for the sale of timber or wood growing or standing on any land, separate from the land, by an administrator under a license from the judge of probate, also declares that such timber or wood shall be deemed to be real estate. Rev. Stats. ch. 164, sec. 6.

Let us examine the deed in this case and see if it is sufficient to convey an interest in land. Under the law of 1791, in relation to conveyances, it was held, that, although a sale of timber to be removed in a certain time conveyed an interest in land, so that the conveyance must

be in writing, yet it need not be by deed. *Putney* v. *Day*, 6 N. H. 430; *French* v. *French*, 3 N. H. 234; *Pritchard* v. *Brown*, 4 N. H. 397; *Olmstead* v. *Niles*, 7 N. H. 522. In the last case cited, *Parker, J.* says : "Whether the statute of 1829, which repealed the act of 1791, has made any alteration in this respect, is a question which does not arise in this case."

But that question soon after arose, and it was held, that, by the law of 1829, no conveyance of any interest whatever in real estate, could be made, except by deed duly signed, sealed, and witnessed by two witnesses; that, without all these requisites, the deed, or writing, conveyed absolutely nothing to any person ; and that it conveyed nothing as against anybody but the grantor and his heirs, unless it were also acknowledged and recorded. *Stone* v. *Ashley*, 13 N. H. 38 ; *Underwood* v. *Campbell*, 14 N. H. 393. In the last case cited it is held, that, under the statute of 1791, a *seal* is essential in order that an instrument may operate as a conveyance under the statute of uses, 27 Hen. 8, ch. 10, which has been adopted in this State ; and that a *seal* is also necessary that the writing may operate as a conveyance by way of bargain and sale under the same statute of 1791.

The deed in this case is sufficient under the statute of frauds to convey an interest in land, for all that statute requires is that the conveyance be in writing. This deed is also sufficient under the statute of 1791, as interpreted in *Underwood* v. *Campbell*, *supra*, because it is sealed. But it would be void under the statute of 1829, according to the interpretation of *Stone* v. *Ashley*, *supra*, because not witnessed by two witnesses, for this deed is not witnessed at all.

Does the law of the Revised Statutes change the law of 1829 in this respect? The law of 1829 enacted that no deed of bargain and sale, &c., should be valid unless executed in manner aforesaid, which was by being signed, sealed, and witnessed by two witnesses. N. H. Laws, 1830, p. 533. The Revised Statutes, chap. 130, sec. 3, provide that every deed or other conveyance of real estate *shall* be signed and sealed by the party granting the same, attested by two or more witnesses, acknowledged, &c., and recorded, &c. ; and sec. 4, provides that no deed of bargain and sale, mortgage or other conveyance of any real estate, or any lease, &c., shall be valid to hold the same against any person but the grantor and his heirs, unless such deed or lease be *attested*, acknowledged and recorded as aforesaid. It will be seen that the only change contemplated in the Revised Statutes was, that a deed not attested by two witnesses might be good as against the grantor and his heirs, whereas by the statute of 1829, it was expressly provided that it must be thus attested in order to be good against anybody. As the law now is, the conveyance will not be good, unless signed and sealed, to convey anything to anybody, but it may be good as against the grantor and his heirs without being witnessed, acknowledged, or recorded. *Hastings* v. *Cutler*, 24 N. H. 481. This deed from the Holbrooks to Conant was therefore sufficient, under the Revised Statutes, being signed and sealed, as against the grantor and his heirs, so that the standing timber which constituted an interest in land passed by this deed to Conant.

The next question is, Was the written agreement or defeasance which was made at the same time with the deed properly admitted? Our statute (Rev. Stats. ch. 131, sec. 2,) provides that "no conveyance in writing of any lands shall be defeated, nor any estate encumbered by any agreement, unless it is inserted in the condition of the conveyance and made part thereof, stating the sum of money to be secured, or other thing to be performed." The question might perhaps arise, whether this does not refer to mortgages only. But we think it is not thus limited. In the original law as passed in 1829, (N. H. Laws of 1830, p. 488,) it was provided that no title, or estate, &c., in any lands, &c., should be " defeated or encumbered by any agreement whatever, unless such agreement, or writing of defeasance, shall be inserted in the condition of said conveyance, and become part thereof, stating the sum, &c., to be secured, or the other thing or things to be performed." There was evidently no intention to change this statute in the revision, and its terms are clearly broad enough in the original act, and must have been intended to cover a case like this.

The written agreement, or defeasance, should not have been admitted, and, of course, the other evidence in regard to the extension of the time of getting off the timber was immaterial. The result is that the deed conveyed the timber absolutely, and this accompanying paper was a contract upon which Conant might have been liable to the Holbrooks, if he did not perform its conditions, and that agreement might be modified by parol. If there had been no modification of that contract, then Conant was to forfeit all the timber he did not get off in three years, and if he did not abide by that contract he would be liable in damages for a breach of it. But if it was modified and the time extended, then he might not be liable. But the deed conveyed the timber to Conant absolutely.

If the parties here intended to make a conditional deed, the condition should have appeared in the deed, and then the title or interest would have been held subject to that condition, as in any other case of a conditional deed.

This writing was also improperly admitted upon another ground. Since we hold that the property conveyed was an interest in land, which can only be conveyed by an instrument under seal, this writing, in order to have operated as a defeasance, must have been also under seal, which is not the fact; so that, independent of our statutes, the writing was not admissible in evidence. *Lund* v. *Lund*, 1 N. H. 41; *French* v. *Sturdivant*, 8 Greenl. 246; *Bickford* v. *Daniels*, 2 N. H. 71; *Runlet* v. *Otis*, 2 N. H. 167; *Wendell* v. *The N. H. Bank*, 9 N. H. 404, 419.

Let us next see whether the assignments from Conant to Pratt, and from Pratt to Kingsley, were sufficient to pass the title on this timber. These assignments are in writing and signed by the grantor, but are not sealed, witnessed or acknowledged. The assignments are sufficient, under the statute of frauds, to pass an interest in land. But, under the Revised Statutes, they would not be sufficient to pass an interest in real estate, upon the authority of *Stone* v. *Ashley*, and *Underwood* v.

*Campbell, supra,* not being under seal. And it becomes necessary here to review the grounds of those decisions, because, upon another ground, we hold these assignments to be sufficient.

It is held in *Bank of Lansingburg* v. *Crary,* 1 Barb. S. C. 542, that growing trees or grass may be severed in law from the land, and become personal property without an actual severance; as where the owner of the land in fee, by a valid deed of conveyance in writing, sells the trees or grass to a third person, or where he sells the land, reserving the timber trees, or grass. In both these cases, the timber, trees, and grass become chattels, distinct from the soil, and go to the executor instead of to the heir. For in contemplation of law they are abstracted from the earth. Toller on Executors, 194; 3 Bac. Ab. 64. So, in *Green* v. *Armstrong,* 1 Denio, 550, it is said, an interest in that which is land can only be created by deed, or written conveyance, and no contract for the sale of such an interest is valid, unless in writing. It is not material and does not affect the principle, that the subject of the sale will be personal property when transferred to the purchaser. If, when sold, it is, in the hands of the vendor, a part of the land itself, the contract is within the statute.

In *Warren* v. *Leland,* 2 Barb. S. C. 613, it is held, (*Paige, J.*), that growing trees, being parcel of the land, are within the statute of frauds, and cannot be sold or conveyed except by deed, or conveyance in writing, but that such growing trees by a valid sale in writing, by the owner of the fee in the land, are severed, in contemplation of law, from the land and become chattels personal without any actual severance; and, after such severance from the land by the original sale, may be conveyed like any other personal property, by parol; and that when such conveyance of the growing trees by the owner of the fee, does not limit the time for the entry of the grantee upon the land to cut and remove the trees, a right of entry passes for an indefinite or reasonable time for the removal of all the trees. It is held that growing trees, when they are the subject of an ownership distinct from the ownership of the soil, are no longer deemed as annexed to the realty, but are regarded as entirely abstracted or divided therefrom. They are then regarded as chattels personal merely, like growing crops of grain or vegetables, which are the annual produce of labor and of the cultivation of the earth. *Evans* v. *Roberts,* 5 B. & C. 829; *Stukely* v. *Butler,* Hob. 300, (* 168.)

This distinction is noticed by *Perley, C. J.,* in *Keyzer* v. *School District,* 35 N. H. 480, where he says: "Certain individuals united to erect a building for a school house on land belonging to another. This being done by license of the land owner, the building would be personal property, and would belong to those who erected it. The proprietors of the building would have no interest in the land, the building would be mere personal property, and each proprietor might sell his share without deed, or other writing, as in case of other personal property owned in common with others". See cases cited.

The assignments in this case, then, were good to convey the interest in the trees, such interest having been severed by the first sale by the

Holbrooks, who then owned the fee in the land, and, having thus become chattels personal, Kingsley might properly bring this suit.  *Cudworth* v. *Scott,* 41 N. H. 456 ; *Plummer* v. *Prescott,* 43 N. H. 277.  The verdict will not be set aside because the writing of defeasance was wrong-fully admitted, as the ruling was against the prevailing party.

*Judgment on the verdict.*