[Civ. No. 8548.   Third Dist.   June 20, 1955.]

PAUL A. PALMER, Respondent, v. PHILIP L. WAHLER et al., Appellants.

Blewett, Blewett, Macey & Garretson and Rolla L. Garretson for Appellants.

Carlton & Shadwell and Daniel S. Carlton for Respondent.

FINLEY, J. pro tem.*—In this action, tried before a jury, plaintiff was awarded a money judgment on an alleged oral contract whereby, for a fee, he undertook to and did procure a purchaser of standing timber in which defendants owned an undivided interest. Defendants have appealed from the judgment and urged the following points of reversal:

"I. The evidence produced at the trial of the action by the plaintiff is insufficient either (A) to support the verdict of the jury and the judgment of the court finding that defendants were indebted to plaintiff by reason of an oral agreement entered into between them to pay a commission to plaintiff, or (B) that the defendants were the owners of a one-half interest in and to the timber rights sold and therefore liable to pay a commission based on one-half of the timber rights sold.

"II. The alleged oral agreement between the plaintiff and the defendants, being an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission, is invalid because there is no note or memorandum thereof in writing and subscribed by the defendants, the parties to be charged, as required by the statute of frauds, section 1624, subdivision 5 of the Civil Code of the State of California.

"III. Plaintiff failed to state a cause of action for recovery of a commission because of his failure to allege and prove that he was a duly licensed real estate broker at the time the alleged cause of action arose, as required by Section 10136 of the Business and Professions Code of the State of California and the trial court erred in refusing to consider this question at any stage of the proceedings, or to submit it to the jury."

The facts of the case are as follows: After a trial in the superior court for Trinity County in 1949 it was adjudged that one Fred Kohle owned an undivided one-half interest in cer-

*Assigned by Chairman of Judicial Council.

tain timber in the Mad River and Hetinshaw Valleys in Trinity County, and that Philip L. Wahler and Margaret Wahler, his wife, owned the other undivided one-half interest. Thereafter, in August of 1949, Fred Kohle conveyed one-half of his undivided one-half interest to Alvin M. Cibula, an attorney at law in Shasta County. In December of 1950 Fred Kohle advised plaintiff of his interest in this timber and promised that if plaintiff would find a buyer who would consummate a deal for the purchase of the timber, a commission would be paid to him. Kohle was not authorized to speak for anyone but himself, as no partnership existed between the coowners, and at the time Kohle and his attorney, Cibula, were dealing at arm's length with the Wahlers and their attorney, R. P. Stimmel, whom the Wahlers contend also owned an undivided interest in the timber. It is alleged by plaintiff that defendants subsequently joined in the agreement to pay him a "finders" commission; that he produced a buyer named Dolan who, after some negotiations with the parties, did cause a corporation formed by him to purchase the timber, but that defendants thereupon refused to pay plaintiff the commission agreed upon.

There is no conflict between plaintiff on the one hand and Kohle and Cibula on the other regarding the transaction. They agree that plaintiff was promised as his commission all that a purchaser would pay over and above $6.00 per thousand for all pine timber and $4.00 per thousand for all fir timber. They contend that defendants agreed to this arrangement. Defendants argue that they were not parties to any such agreement and, furthermore, that even though in their answer they admitted ownership of an undivided one-half interest in the timber, their attorney, Stimmel, on July 7, 1949, acquired a 15 per cent interest in their one-half interest which in June of 1951 was increased to 20 per cent.

The evidence is conflicting as to just what, if any, the arrangement was between plaintiff and defendants. Kohle, Cibula and plaintiff testified regarding several telephone conversations carried on by each of them with defendants, and it is claimed that defendants, as a final arrangement, assented to the payment of a commission to plaintiff of $2.00 per thousand on all the pine timber sold. Defendants deny any such assent or agreement, but the jury found against them and in favor of plaintiff on the issue, and a review of the record discloses ample testimony of sufficient substantiality to support the finding. We so hold, and beyond this we are not required

to go. (*Trancoso* v. *Trancoso*, 96 Cal.App.2d 797 [216 P.2d 172].) It would serve no useful purpose to set forth here the supporting testimony. Numerous excerpts from the record appear in the briefs of both parties, but an appellate court cannot be placed in the jury box beyond the point of determination that there is sufficient evidence to support the verdict of a jury or the finding of a trial judge. (*Estate of Moramarco*, 86 Cal.App.2d 326 [194 P.2d 740] ; *Smythe* v. *Schacht*, 93 Cal.App.2d 315 [209 P.2d 114] ; *Trancoso* v. *Trancoso*, *supra*; *Consolidated Pipe Co.* v. *Gries*, 103 Cal.App.2d 901 [230 P.2d 385].)

On the point that defendants were not owners of a one-half interest in the timber, the fact that they were such owners was admitted in their answer, and their motion to amend near the end of the trial was properly denied by the trial court. Attorney Stimmel was not made a party to the action, and we can only assume that he was not made so on account of this admission on the part of defendants which was relied upon by plaintiff. The trial court properly took the position that, under the circumstances, this question of ownership was between the Wahlers and their attorney, Mr. Stimmel, and with this we agree. It would, in light of the facts disclosed, have been unfair to plaintiff for the trial court to have granted defendants' motion to amend their answer at the late date it was made. If allowed, such an amendment would, in effect, have unjustifiably amended away a part of plaintiff's remedy through no fault of his own. ■ Such a motion is properly denied if it appears that the applicant had knowledge and ample time to correct any inaccuracies in the pleading before trial. (*Manha* v. *Union Fertilizer Co.*, 151 Cal. 581 [91 P. 393] ; *Hancock* v. *Hubbell*, 71 Cal. 537 [12 P. 618] ; *McGushin* v. *Arnold*, 21 Cal.App.2d 271 [68 P.2d 733].) The fact that the record discloses no formal denial of defendants' motion before the trial ended is of no substantial importance. ■ The court clearly indicated that the motion was denied which is sufficient in the absence of a showing that prejudice resulted. (*Hewel* v. *Hogin*, 3 Cal.App. 248 [84 P. 1002].) A formal written ruling was later made and filed.

Referring to appellants' points II and III above, respondent contends that the type of agreement with which we are here concerned is a finders agreement, and that it falls neither within the purview of the statute of frauds nor the real estate licensing laws. There is no substantial evidence that plaintiff was asked or employed to do other than find a buyer, or that he

handled or participated in the negotiations for sale after he had found and introduced the buyer, Dolan, to the owners of the timber. The only evidence of plaintiff's participation in the negotiations is in connection with the payment of his commission. There is no evidence that he participated in any other phase of the transaction. There is evidence that during the negotiations the timber owners called him by telephone and secured his consent to a waiver of any commission on the fir timber sold, but that is all. This involved the relationship between the timber owners and plaintiff but not the terms of the contract between the owners and the buyer.

The question of the enforceability of an oral finders agreement by one not holding a real estate license was recently passed upon in the case of *Crofoot* v. *Spivak*, 113 Cal.App.2d 146 [248 P.2d 45], which was an action brought to collect money alleged to be due for the procuring and introducing of a buyer for defendant's mill and timber properties. Plaintiff admittedly had no license to sell real estate, and defendant asserted this as a defense to the action. At pages 147-148 of the decision we find this language:

"Reduced to its simplest proportions, this appeal has to do with the question of whether or not a license is required before one can collect on a promise to pay compensation for introducing a prospective purchaser to a property owner desiring to sell his properties, nothing more being done than the bare act of introduction. We think it unnecessary in the decision of this case to follow appellant through his discussions of the proper interpretation of the pertinent licensing acts because we think the case is controlled by the decision in *Shaffer* v. *Beinhorn*, 190 Cal. 569 [213 P. 960], decided in 1923. Therein defendant, a licensed real estate broker, entered into an agreement with plaintiffs promising that if the latter would find anyone interested in the purchase of the property which the broker had for sale, to whom the broker would be able to negotiate a sale, or would introduce to him anyone to whom he would be able to make a sale, he would pay plaintiffs a certain percentage of his broker's commission. Plaintiffs did introduce such a prospective purchaser to whom the defendant broker negotiated a sale. It was held the complaint stated a cause of action and did not show that the plaintiffs were acting as real estate brokers within the meaning of the Real Estate Brokers Law. . . . The trial court, upon substantial evidence, found particularly that the promise upon which plaintiff sued was a promise to pay for an intro-

duction and required no further act on the part of respondent to raise the liability sued upon. The trial court also found that respondent did no more than was called for, that is, did nothing but introduce the prospective purchasers to the appellant who himself thereafter conducted the negotiations resulting in the sale of his property without any act or aid by respondent. The cited case was decided, as noted, some 29 years ago and in the intervening time successive Legislatures have met and have made no amendments to the pertinent language of the enactment which would change the scope of the Legislature's definition of who was a real estate broker as that definition was contained in the act current at the time the Supreme Court made its decision. Under such circumstances we think it clear that the Legislature has acquiesced in the interpretation of the statute as given and that no justification could be found for any different interpretation now. As pointedly observed by the trial judge in his memorandum opinion, no license is required for the simple act of introducing one person to another—yet.''

The Crofoot case was decided in September of 1952 by this court. In December, 1952, the decision in *Hooper* v. *Mayfield*, 114 Cal.App.2d 802 [251 P.2d 330], wherein statements appear indicating a contrary view, came down from Division Two of the First Appellate District. In May of 1954 there appeared on this subject the highly illuminating case of *Freeman* v. *Jergins*, 125 Cal.App.2d 536 [271 P.2d 210], wherein Division Three of the Second District was divided, Mr. Justice Vallée rendering a dissenting opinion. In the majority opinion by Mr. Justice Shinn, and in the dissent, the question of the validity of a ''finders'' agreement was thoroughly and ably discussed. In the majority opinion, *Hooper* v. *Mayfield*, *supra*, was distinguished and the rule, originally announced in *Heyn* v. *Philips*, 37 Cal. 529, and followed in *Shaffer* v. *Beinhorn*, 190 Cal. 569 [213 P. 960], *McKenna* v. *Edwards*, 19 Cal.App.2d 327 [65 P.2d 810], and in *Crofoot* v. *Spivak*, *supra*, was approved and followed. It therefore appears that the law in California as originally announced by our Supreme Court in *Heyn* v. *Philips*, *supra*, and followed by that court in the Shaffer case is that a so-called ''finders agreement'' falls neither within the purview of the statute of frauds nor the real estate licensing acts. We hold that the agreement with which we are here concerned is such an agreement, and, therefore, regardless of whether the timber be considered as realty or

personalty, the plaintiff, although not a licensed real estate broker, and acting under an oral agreement only, was entitled as a matter of law to the payment of his commission.

Going further, it would seem that the enforceability of plaintiff's contract need not rest solely upon the determination of this point. In California, under the provisions of Civil Code, sections 658 and 660, standing timber purchased separately from the land under a contract for severance, thereby becomes personalty for all purposes depending upon the contract of purchase. As pointed out by both parties in their briefs, the legal status of standing timber is not uniform throughout the several states, and in California there are no decisions directly upon the point involved here. ██ However, the language of Civil Code, sections 658 and 660, is in our opinion quite clear and explicit, and regardless of what the rule is elsewhere, we are satisfied that as to those claiming under or by reason of a contract of sale, the California rule is that where standing timber is purchased separately from the land for the purpose of severance, it must thereafter be considered as ''goods'' or personal property. (See also *Davis v. McFarlane,* 37 Cal. 634 [99 Am.Dec. 340].)

Here neither the appellants nor their coowners in the timber had any interest in the land upon which it stood. The time within which they could enter and remove the timber was limited by the terms of the grant to December 31, 1954. Therefore the ''estate'' which was the subject matter of the contract of sale was but one for years and was subject to disfeasance at the expiration of a fixed term. It was similar in nature to an interest created by an oil and gas lease for years which has been held to be a chattel real and not ''real estate'' within the meaning of section 1624(5) of the Civil Code. (*Dabney v. Edwards,* 5 Cal.2d 1 [53 P.2d 962, 103 A.L.R. 822].)

There are several provisions in the contract between the buyer and sellers here dealing with the question of severance of the timber and the mode of payment therefor in the event that the rate of severance exceeded the apparent expectation of the parties when the stipulated periodic payments were fixed. Although the necessity for severance is not dictated or required by actual terms of the contract, it is the unquestionable purpose thereof, and forfeiture in the event of nonseverance is made a specific condition. It would therefore be entirely unrealistic to say that the contract was not one according to the terms of which ''industrial growing

crops and things attached to or forming part of the land . . . are agreed to be severed . . . under the contract of sale . . ..'' as provided in Civil Code, sections 658 and 660. Further, it would seem only logical that aside from the provisions of these code sections, a sale of timber for the purpose of cutting and removing it from the land would amount to a constructive severance until such time at least as there should be, if ever, a reuniting or merger of the ownership of the land and the timber again into common ownership. (*Peterson* v. *Gibbs*, 147 Cal. 1, 7 [81 P. 121, 109 Am.St.Rep. 107]; *Kingsley* v. *Holbrook*, 45 N.H. 313 [86 Am.Dec. 173 and note]; *Hoit* v. *Stratton Mills*, 54 N.H. 109 [20 Am.Rep. 119]; *Purner* v. *Piercy*, 40 Md. 212 [17 Am.Rep. 591 and note].)

We recognize the marked difference of opinion in the various jurisdictions with respect to the status of standing timber sold separate from the land  (See 7 A.L.R.2d 517.) What its status should be in California in the event that it is not sold for severance is not involved here.  We therefore expressly limit this decision to rights or obligations originated by or depending upon the contract of sale in a situation where trees or timber are sold separate from the land and where severance from the land is the express or obvious purpose of the sale.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.