C. Gardner **SULLIVAN**, II, Appellee,

v.

Mrs. John R. **HOPKINS**, Appellant.

No. 24239.

United States Court of Appeals, Ninth Circuit.

Dec. 15, 1970.

Clarence S. Hunt, Albert H. Ebright, of Ball, Hunt, Hart & Brown, Long Beach, Cal., for appellant.

Ronald H. Bonaparte, John A. Joannes, Los Angeles, Cal., for appellee.

Before BROWNING, CARTER and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant and her co-defendant, Arthur Stegall, were defendants in an action on contract prosecuted by appellee against them in the district court. Stegall settled prior to trial. In a non-jury diversity case, the judge awarded a judgment against appellant for $55,000.-00, plus interest. We affirm.

## OUTLINE OF FACTS

Although the claim is stated in three alternate counts, we need concern ourselves only with the common count for services rendered.

We believe that the following is a fair statement of the appellant's case. Appellee, Sullivan, is an IBM operator and a musician. In 1965, he learned that Irma Kellogg was interested in selling her Santa Barbara County ranch. As a result of a conference, she orally agreed to pay him a commission of 5% of the purchase price if he produced a buyer. To work out the details of the transaction, she referred him to her attorney, Mr. Crawford. The latter, when contacted by appellee, restated Mrs. Kellogg's agreement to pay appellee a 5% commission upon producing a buyer. Crawford and Kellogg, although the subject was never discussed, assumed that the appellee was a real estate broker. In the conversation there was no mention of purchase price or terms of sale.

Appellee then contacted a friend, an attorney in Denver, Colorado, and advised him of the availability of the ranch. The attorney interested two of his clients in the ranch, the former defendant Stegall and the appellant, Hopkins. The attorney, Stegall and appellant then visited the ranch where the ap-

pellee introduced them to Kellogg and Crawford. Appellee did not participate in the negotiations, but he did give some assistance, from time to time, as the negotiations proceeded. After the introduction, appellee did not accompany the buyers on the inspection tour of the ranch. He remained with Mrs. Kellogg and entertained her by playing the piano and in conversation. At one time, he reported to the buyers some information which they had requested regarding a prior sale of part of the ranch. At one time, he expressed the view that the proposed offer might be so low that it would end the negotiations. Occasionally, the Denver attorney and Stegall asked that appellee collect certain information from sources readily available to the public. He complied with these requests. On one occasion, he permitted the parties to use his office to prepare papers. On numerous occasions, he discussed the progress of the negotiations with the buyers and generally tried to be helpful.

During the negotiations, the appellee's "commission" was mentioned on a number of occasions and all parties were fully aware of the agreement on the part of the seller. On one occasion, the Denver attorney discussed with appellee the legal obstacles to collecting a real estate commission in the state of California, but ended the conversation by assuring the appellee that Stegall and appellant would see that he was protected. On another occasion, the buyers proposed to the appellee that he take an interest in the property for his commission.

Ultimately, the parties agreed upon a purchase price of $1,800,000.00. During the course of drafting the closing documents, the buyers proposed that they would pay appellee's commission if Mrs. Kellogg would reduce the purchase price to $1,700,000.00. Mrs. Kellogg was persuaded that this arrangement would have favorable tax consequences and the proposal was accepted. On February 21, 1966, a written agreement was entered into between Kellogg, as seller, and Stegall and the appellant as purchasers of the ranch. As part of the written agreement, Stegall and appellant agreed to pay to appellee the commission of 5% of the $1,700,000.00 purchase price that Kellogg was originally obligated to pay.

Subsequently, Stegall and the appellant refused to pay the commission. After appellee instituted this action, Stegall settled with the appellee for $30,000.00. The complaint was then amended and the action thereafter proceeded solely against the appellant.

ISSUES

We summarize the issues as follows:

(1) Was there evidence to support the finding of the trial court that the agreement to pay a commission was predicated upon a promise to pay a finder's fee, rather than a real estate broker's commission?

(2) Are the court's findings in conflict with the pleadings?

(3) Did the trial court err in awarding a judgment of $55,000.00 and interest, rather than a judgment of $42,500.00 and interest?

■ (1) The principal thrust of the appellant's argument is that to permit a recovery in this case would violate California's public policy against allowing unlicensed persons to act as real estate brokers. She argues that appellee's services in connection with the sale of the property fall within the purview of the California Bus. & Prof.Code, § 10136,[1] and that appellee, not being a licensed broker, cannot recover.

Appellee, on the other hand, argues that he was acting as a finder and that his status was within the California rule

---

1. Cal.Bus. and Prof.Code § 10136. "*Action for compensation; pleading and proof of license.* No person engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this State shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose."

which allows compensation to one not licensed as a real estate broker, for finding and introducing a person interested in purchasing real property. Palmer v. Wahler, 133 Cal.App.2d 705, 285 P.2d 8 (1955).

Although appellant makes an exceptionally persuasive argument in support of her contention that appellee was a real estate broker, rather than a finder, we believe that the record is such that the trial judge could have decided the issue either way. He resolved it in favor of the appellee. Beyond question, there is substantial evidence in support of his position.

After an examination of the entire record, we believe the trial judge hit the nail on the head when he said in his written opinion:

> "Essentially, * * *, the transaction was one in which the plaintiff was simply obligated to bring the buyer and seller together in order to earn his fee. This he did. The negotiations were carried on by Mr. Crawford, Mrs. Kellogg's attorney, on the one hand and Mr. Stegall, an experienced and astute real estate investor, and Mr. Reardon, acting for his client, Mrs. Hopkins, on the other. Neither side needed, expected, or relied upon plaintiff's further participation. What plaintiff did in addition to bringing the buyer and seller together was out of a spirit of helpfulness and not with the expectation or purpose of additional reward. These activities, if they affected the transaction at all, were purely incidental." (Record, page 273).

Subsequent to the filing of the opinion, the judge signed formal findings the appellant filed a request for additional findings. The appellee filed objections to the seventeen requests. After a supplemental hearing, the judge took the requests and the objections under submission and thereafter approved and conclusions. Some time thereafter, certain of the requests and denied others. The record demonstrates beyond successful contradiction that the court

below painstakingly considered this issue, including the testimony pro and con, and then concluded that the weight of the evidence was in favor of appellant.

■ The trial court's finding and conclusion that the status of appellee was that of a finder, rather than a broker, is fully supported by California law. The services performed by finders may vary form case to case, but their distinction from the status of a broker, lies in their bringing the parties together with no involvement on their part in negotiating the price or any of the other terms of the transaction. Evans v. Riverside International Raceway, 237 Cal.App.2d 666, 675–676, 47 Cal.Rptr. 187, 193 (1965).

The testimony of Kellogg's attorney makes it patently clear that his job was to handle all of the negotiations and transactions leading up to the signing of the contract and closing of the sale. Appellee was only obligated to find a buyer. The court below made a specific finding that appellee did not, in a meaningful way, participate in the negotiations for the purchase and sale of the ranch. Being a finder, the appellee was entitled to a commission from the appellant in accordance with the agreement. Porter v. Cirod, 242 Cal.App.2d 761, 766, 51 Cal.Rptr. 784, 788 (1966); Palmer v. Wahler, *supra*. Many additional California authorities could be cited in support. The appellee's incidental activities are not to be confused with the outright broker activities of the claimant in Hasekian v. Krotz, 268 Cal.App.2d 311, 322, 74 Cal.Rptr. 410, 417 (1968). We deem it unnecessary to comment on other authorities cited by appellant. The findings on this issue are not clearly erroneous. Neither is it necessary to comment on the issues of standing and estoppel raised by the appellee.

■ (2) Next, appellant claims that there was a fatal variance between the date of the contract mentioned in the pleadings and the date mentioned in the court's findings. The amended com-

plaint alleges that appellant and Kellogg made their contract with reference to a finder's fee on or about November 1, 1965. The court's opinion mentions no particular date. The amended findings carry the date of January, 1966. Although appellant filed a formal motion to amend the findings, she did not call the court's attention to the alleged variance, nor was this claim insofar as our search of the record reveals, ever presented to the trial judge. However, the evidence is clear that the agreement was made in January. If the alleged variance had been called to the court's attention, he would, no doubt, have permitted an amendment to conform to the proof. In any event, the variance was harmless within the import of Rule 61, FRCivP, and the design of 28 U.S.C. § 2111.

▄ (3) The appellant's contention that the amount of the judgment awarded by the trial court is erroneous arises from the joint and several nature of the obligation owed by Stegall and Hopkins and the settlement agreement between appellee and Stegall.

Cal.Civ.Code § 1432 provides for a right of contribution among joint and several obligors where one party satisfies more than his share of the claim against all. Cal.Civ.Code § 1543 provides that the release of one joint debtor does not extinguish the obligations of the others nor does it affect their right to contribution from the released party.

The position of the appellant, Hopkins, is that the settlement agreement between Sullivan and Stegall, whereby Sullivan agreed to indemnify Stegall against any further loss in connection with the sale of the Kellogg ranch, demonstrates an intent on appellee's part to limit his claim against appellant to $42,500.00. Thus, the appellant argues that in light of the above statutes, the agreement between appellee and Stegall resulted in an abandonment of $12,500.-00 of Sullivan's total claim against Stegall and the appellant. Appellant says that the judgment as it now stands will force her to proceed against Stegall, her co-obligor, for contribution and in turn will require appellee to indemnify Stegall for the amount of the contribution pursuant to the terms of the settlement agreement.

Assuming, without deciding, that the position of the appellant is supported by the relevant California statutes and case law, for the reasons hereafter stated we hold that these issues were not properly presented to the trial court. Appellant's argument that these issues were presented is not borne out by the record. She relies on the following: (1) that the appellee in his proposed pre-trial conference order stated that one of the issues to be litigated was " * * * whether $85,000.00, less the value of the land transferred by Stegall to Sullivan, under the compromise agreement, * * * constitutes the damages suffered by plaintiff."; (2) that the issue was inferentially raised in Hopkins' motion to dismiss on the ground that the release of Stegall also released the appellant; and (3) that the issue was " * * * a necessary fact issue raised by Sullivan himself by virtue of his introducing into evidence the compromise agreement." The mentioned material was not in the form of, nor did it take the place of a proper pleading. A trial court must have adequate notice of the issues to be tried. The first specific mention of a right to contribution, as we read the record, was in the appellant's objections to the findings of fact filed after the court had entered its formal opinion and the proposed findings and judgment had been served and presented. Even at that late date, appellant was relying on Cal.Civ.Code § 1432, rather than on the language of the indemnity agreement in the release.

▄ California is committed to the rule that a release of one joint debtor does not extinguish the obligation of any of the other joint debtors to pay so much of the debt as was not paid by the released obligor. That is to say, the release does not extinguish the remainder of the obligation as to the co-obligor.

Lovetro v. Steers, 234 Cal.App.2d 461, 477, 44 Cal.Rptr. 604, 614 (1965). Clearly, the court had authority to enter the judgment from which this appeal is prosecuted. If the issues of indemnification and contribution are to be litigated they must be presented in another case to the proper court under adequate pleadings.

Judgment affirmed.