Ralph ZANFARDINO, Plaintiff,

.v.

E–SYSTEMS, INC., Defendant.

No. 86 Civ. 580 (EW).

United States District Court,
S.D. New York.

Feb. 2, 1987.

Winston & Sherman P.C., New York City, for Ralph Zanfardino; Howard Sherman, of counsel.

Baker & McKenzie, New York City, for E–Systems, Inc.; Charles Cummings, of counsel.

EDWARD WEINFELD, District Judge.

Plaintiff, Ralph Zanfardino, in June 1982, then a resident of South Carolina, entered into an employment contract, which was negotiated and executed in Greenville, Texas, where defendant E–Systems', Inc., a Texas corporation, maintains its principal

place of business. The contract, which by its terms was for one year beginning July 6, 1982, was terminated by Zanfardino's discharge on February 1, 1983. On February 26, 1986, Zanfardino, then a resident of New York state, commenced this diversity action, alleging claims for wrongful discharge and intentional infliction of emotional distress stemming from the alleged breach of this contract. E–Systems now moves to dismiss these claims as time-barred, and alternatively to dismiss the emotional distress claim on the ground that the complaint fails to allege the elements of such an action.

Under the contract, E–Systems, acting on behalf of the Multinational Force and Observers (MFO),[1] agreed to employ Zanfardino as a power plant supervisor on an MFO base. A choice of law clause stated that "any disputes arising over the terms of this Agreement shall be determined under the laws of the State of Texas."[2] Performance was to take place "in the Sinai at any one or more of the places therein as designated by the Company."[3] E–Systems, relying on the 1978 Israeli/Egyptian Peace Treaty,[4] whereby the boundary between the countries was changed resulting in the two MFO bases being located exclusively on Egyptian soil, argues that Zanfardino was employed in Egypt. However, as outlined below, it is possible that Zanfardino did not work in Egypt at all, but was instead employed in a multi-national no-man's land.

Pursuant to the contract, Zanfardino was permanently assigned to the base camp, which was separated from Egyptian territory by fences and barricades and was guarded by United States soldiers employed by the MFO. Housing and meals at the base camp were provided, and Zanfardino was not permitted to leave the base camp, except that for every two weeks worked in the base camp, Zanfardino earned one day of rest and relaxation, which could be used only for traveling to designated sites in Tel Aviv or Cairo with transportation supplied by E–Systems.[5] Payment of Zanfardino's salary was made in United States dollars and deposited by E–Systems into a United States bank.[6] Zanfardino paid no foreign income tax, but was subject to United States federal, social security, and state income taxes.[7]

Zanfardino commenced his employment on the specified date at the Sharm El Sheikh MFO base. On February 1, 1983, prior to the contractual completion date, E–Systems terminated Zanfardino's employment. He did not receive a completion bonus, travel expenses back to the United States, or vacation and other benefits provided for in the contract. Zanfardino now seeks damages for the loss of these benefits and lost earnings, and also seeks damages for the intentional infliction of emotional distress which allegedly occurred when he was forced to leave the MFO base immediately upon termination, although he had no funds at that time, and was given none by which to travel out of the Middle East.

## DISCUSSION

█ A federal court sitting in diversity must determine which jurisdiction's law governs a transaction involving multiple jurisdictions,[8] and must apply the choice of law rules of the state in which the case was

---

1. The MFO is an international entity established to monitor activities between Israel and Egypt, *Palmer v. Schultz,* 616 F.Supp. 1540, 1551 (D.C. D.C.1985); and serves as a peacekeeping buffer between those countries. The MFO keeps two bases: El Gorah, located near the northeast tip of Egypt, and Sharm El Sheikh, found at the southernmost end of Egypt.

2. Contract, para. 20.

3. Contract, para. 2.

4. Treaty of Peace between the Arab Republic of Egypt and the State of Israel, March 26, 1979, art. 1, para. 3.

5. Contract, para. 6(e).

6. *Id.*

7. Contract, para. 9.

8. *Hutner v. Greene,* 734 F.2d 896, 899 (2d Cir. 1984).

brought to do so.[9] Under New York law, a choice of law clause is honored, but operates only to import the substantive law of the selected state.[10] While some discrepancy exists as to whether New York views statutes of limitations as procedural[11] or substantive,[12] the issue need not be resolved here because the Texas limitations periods will apply in either instance.

[2] If the statute of limitations is viewed as substantive, the choice of law clause will be invoked to apply Texas limitations periods to this case. If, however, the statute of limitations is viewed as procedural, this issue must be analyzed under New York's borrowing statute, N.Y.C.P. L.R. sec. 202.[13] Section 202 provides that if the plaintiff is a non-resident at the time the cause of action accrued,[14] and the cause of action accrued outside of New York, the Court will apply either the limitations period of the jurisdiction where the action accrued, or of the New York statute, whichever is shorter.[15] It is undisputed that Zanfardino was not a New York resident when he was discharged in Egypt. New York's statute of limitations for breach of employment contract is six years,[16] and thus must yield either to Texas, which has a four-year statute of limitations for breach of employment contract claims,[17] or to Egypt, which adopts a one-year period.[18]

■ The question thus is which law governs the contract between the parties. Under *Klaxon Co. v. Stentor Electric Manufacturing Co.*,[19] we are required to apply New York State's choice of law rules in this diversity action. New York courts apply a "paramount interest" test to choice of law issues involving contract disputes.[20] Under this test, "the law of the jurisdiction having the greatest interest in the litigation will be applied."[21]

The "paramount interest" test clearly favors a disposition under Texas law. Texas is the place of contract negotiation and signing, the principal place of business and state of incorporation of the defendant, and arguably where the termination decision

9. *Id.* at 899. *See also Day and Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Texas Eastern Transmission v. General Electric Co.*, 601 F.Supp. 627 (S.D.N.Y.1985).

10. *Sears, Roebuck & Co. v. Enco Associates*, 43 N.Y.2d 389, 398, 372 N.E.2d 555, 559, 401 N.Y. S.2d 767, 772 (1977); *Freedman v. Chemical Construction Corp.*, 43 N.Y.2d 260, 265, 372 N.E.2d 12, 15, 401 N.Y.S.2d 176, 179 (footnote) (1977).

11. *Sears, Roebuck & Co. v. Enco Associates*, supra; *Caffaro v. Trayna*, 35 N.Y.2d 245, 250, 319 N.E.2d 174, 176, 360 N.Y.S.2d 847, 859, n. 2 (1974).

12. *See Gargiul v. Tompkins*, 790 F.2d 265, 273 (2d Cir.1986); *Smith v. Russell Sage College*, 54 N.Y.2d 185, 194, 429 N.E.2d 746, 445 N.Y.S.2d 68, 72 (1981): (holding that a dismissal on statute of limitations grounds is a dismissal on the merits for res judicata purposes.)

13. An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

14. *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 243 (2d Cir.1984); *Antone v. General Motors Corp.*, 64 N.Y.2d 20, 28, 473 N.E.2d 742, 745, 484 N.Y.S.2d 514, 517 (1984).

15. *Maiden v. Biehl*, 582 F.Supp. 1209, 1212 (S.D. N.Y.1984).

16. N.Y.C.P.L.R. sec. 213(2).

17. Tex.Rev.Civ.Stat.Ann., art. 5527.

18. Egyptian Civil Code, Law No. 131, art. 698(1).

19. 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

20. *Hutner v. Greene*, 734 F.2d 896, 899 (2d Cir. 1984); *Transunion Corp. v. Pepsico, Inc.*, 640 F.Supp. 1211, 1214 (S.D.N.Y.1986); *Miwon, U.S.A., Inc. v. Crawford*, 629 F.Supp. 153, 155, n. 1 (S.D.N.Y.1985); *Gould Entertainment Corp. v. Bodo*, 107 F.R.D. 308, 312, n. 3 (S.D.N.Y.1985).

21. *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 382 248 N.E.2d 576, 582, 300 N.Y.S.2d 817, 825 (1969); *Miller v. Miller*, 22 N.Y.2d 12, 15–16, 237 N.E.2d 877, 879, 290 N.Y.2d 734, 737 (1968).

and all other executive decisions concerning Zanfardino's employment were made. Moreover, the contract, which it is safe to assume was drafted by E–Systems, expressed the parties' desire to have Texas law apply to resolution of their contract disputes whenever possible.

 Comparatively, Egypt has very little, if any, interest in the outcome of this case. Indeed, it would be more accurate to say it is without the slightest interest in this matter. Although the MFO base was located on Egyptian soil, Egyptian civilians were not permitted to enter the base camp, and Zanfardino likewise could not travel without the base camp, except during infrequent and circumscribed rest and relaxation periods. The MFO conducted all rule-making and discipline on the base camp, which it maintained and policed exclusively. Because Zanfardino was thus neither employed nor domiciled within an area of Egyptian sovereignty, Egypt has no significant contacts with this matter. It is clear that Texas law applies, and that the action was commenced prior to the expiration of the four-year statute of limitations. Zanfardino is therefore entitled to assert his contract claims.[22] However, Zanfardino's emotional distress claim must be dismissed because it was not brought within Texas' two-year time limitation for intentional torts.[23]

### CONCLUSION

E–Systems' motion to dismiss the claims as untimely is denied as to Zanfardino's contract claims, and granted as to Zanfardino's emotional distress claim. It is therefore unnecessary to address E–Systems' argument that the emotional distress claim was not pleaded properly.

So ordered.

22. In this regard, the case at hand is very similar to *Teledyne Industries, Inc. v. Eon Corp.*, 373 F.Supp. 191 (S.D.N.Y.1974); where it was held, under New York choice of law rules, that California law applied to a contract dispute where the contract was negotiated and signed in California, one of the parties was a California cor-

23. Tex.Rev.Civ.Stat.Ann., art. 5526.