961 F.2d 216
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ALL-PRO REPS, INC., Plaintiff,
and
Jerry A. Davis, Plaintiff-Appellant,
v.
Gregg LUKENBILL; Frank Lukenbill; Lukenbill Enterprises;
Joseph Benvenuti, dba J.B. Company, a California sole
proprietorship; Robert A. Cook; Frank McCormack; Stephen
A. Cippa; C, C, M & L, a California General partnership,
Defendants-Appellees.
Jerry A. DAVIS, Plaintiff-Appellee,
v.
Gregg Lukenbill; Frank Lukenbill; Lukenbill Enterprises;
Joseph Benvenuti, dba J.B. Company, a California sole
proprietorship; Robert A. Cook; Frank McCormack; C, C, M
& L, a California General partnership; Stephen A. Cippa,
Defendants-Appellants.
 Nos. 90-16397, 90-16430.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 13, 1992.
Decided April 22, 1992.
 
 1
 Appeal from the United States District Court for the Eastern District of California, No. CV-84-36-EJG, Edward J. Garcia, District Judge, Presiding.
 
 
 2
 E.D.Cal.
 
 
 3
 AFFIRMED.
 
 
 4
 Before: HALL and WIGGINS, Circuit Judges, and MUECKE, District Judge.*
 
 MEMORANDUM
 
 5
 Both parties appeal from a jury verdict awarding Davis $400,000 for breach of contract and prejudgment interest, and a verdict for Davis on an interrelated third-party beneficiary claim but no corresponding award of damages. We affirm.
 
 
 6
 * Davis argues that the district court should have applied Missouri choice of law rules after his Missouri complaint was consolidated with his original New York complaint before Judge Garcia. We disagree. This action was originally filed in the Southern District of New York and New York's choice of law rules therefore apply regardless of subsequent changes of venue. Ferens v. John Deere Co., 494 U.S. 516, 523 (1990) (applying rule when plaintiff moves for transfer); Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) (applying rule when defendant moves for transfer). The district court acted properly to prevent actions by the parties from changing the substantive law applicable to the action.
 
 II
 
 7
 Davis next argues that the district court, applying New York choice of law rules, should have selected the substantive law of New York as the law governing all but his third-party beneficiary claim.
 
 
 8
 * Davis first argues that New York courts would analyze the applicable statute of frauds in a choice of law analysis distinct from that applicable to the case as a whole. To succeed, Davis would have to argue that the statute of frauds is procedural and therefore governed by the law of the forum. The New York courts, however, are disinclined to treat the statute of frauds as a procedural issue, but rather treat the statute of frauds as a substantive matter of contract law. Intercontinental Planning, Ltd. v. Daystrom, Inc., 248 N.E.2d 576, 581 (N.Y.1969). Moreover, both the New York and the California statutes of frauds are phrased in a manner that courts generally interpret to carry substantive rather than procedural import. See Eugene F. Scholes & Peter Hay, Conflict of Laws § 18.38, at 693 (1984 & Supp.1988) (statute of frauds declaring contract "void" substantive while statute declaring that "no action shall be brought" is procedural); Cal.Civ.Code § 1624 (West 1992) (contracts "invalid"); N.Y.Gen.Oblig.Law § 5-701 (contracts "void"). The district court's simultaneous consideration of applicable general contract law and the applicable statute of frauds was therefore correct.
 
 B
 
 9
 New York follows a mixed "paramount interest" and "center of gravity" test in deciding which state's law to apply to a particular case. See Intercontinental Planning, 248 N.E.2d at 582; see also E. Scholes & P. Hay, supra, § 18.21, at 669 & n. 5, Supp. 122 (citing Intercontinental Planning ). While New York courts (and federal courts interpreting New York law) often purport to apply the paramount interest test, in practice they often apply a center of gravity or center of contacts test. See E. Scoles & P. Hay, supra, § 18.21, at Supp. 122.
 
 
 10
 Applying these principles to the facts at hand, the district court's conclusion that the majority of the state interests and contacts lied in California was correct. In Hutner v. Greene, 734 F.2d 896 (2d Cir.1984), the Second Circuit applied New York choice of law rules to a claim for a finder's fee where the alleged finder's contract was negotiated in California. The court held that New York had the paramount interest in the contract because the parties to the main contract (i.e., the contract that resulted from the finder's work) both resided in New York, the main contract was negotiated and performed in New York, and the main contract expressly selected New York law as governing. Id. at 899. Given these facts, the court held that California's interest was minimal where its only connection with the contract was in having been the site of the alleged, oral, finder's fee contract. Id. at 900.
 
 
 11
 The district court appropriately considered the situation at hand to be the converse of that presented in Hutner. Here, the parties to be protected by the statute of frauds are California residents. Thus, California has the preeminent interest in enforcing its statute of frauds. See Intercontinental Planning, 248 N.E.2d at 583 ("The general purpose underlying a Statute of Frauds can be characterized as the protection of parties who are sued for alleged promises informally made...."); id. at 582-83 (New York's interest in enforcing own statute of frauds is to "protect not only its own residents, but those who come into New York and take advantage of our position as an international clearing house and market place.") (emphasis added). New York's only interest in or contact with the contract arose out of Davis's residency and telephone calls made to and from New York. Thus, the district court properly applied New York choice of law rules to conclude that California substantive law governs the contract.
 
 III
 
 12
 Defendants argue that the district court erred by reconsidering its earlier partial grant of summary judgment against Davis. Because the summary judgment granted by the court was not dispositive of the entire case, under Federal Rule of Civil Procedure 54(b)[1] the court's order would have functioned as a final judgment only if the court expressly ordered such a result. Such an order is therefore interlocutory rather than final. Diamond Door Co. v. Lane-Stanton Lumber Co. (In re Diamond Door Co.), 505 F.2d 1199, 1202 (9th Cir.1974).
 
 
 13
 An interlocutory order does not have any res judicata effect. See Luben Indus., Inc. v. United States, 707 F.2d 1037, 1040 (9th Cir.1983) (an unappealable decision is "not sufficiently firm to give it collateral estoppel effect"); James Wm. Moore & Jeremy C. Wicker, Moore's Federal Practice p 56.20[3.-4], at 56-704 (1988). In United States v. Desert Gold Mining Co., 433 F.2d 713, 714 (9th Cir.1970), the district court granted summary judgment to Edwards, one of several defendants. The district judge then died, and the case proceeded to trial as to the remaining defendants. Following a verdict for plaintiff, plaintiff moved the court to reconsider the previous district judge's grant of summary judgment to Edwards. The district court vacated the partial summary judgment, and ruled against Edwards. The Ninth Circuit upheld the district court's actions, reasoning that
 
 
 14
 the partial summary judgment under Fed.R.Civ.P. 54(b) was "subject to revision at any time before an entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." ... The judgment therefore remained subject to reconsideration and revision either by the same judge, a successor judge or a different judge to whom the case might be assigned.
 
 
 15
 Id. at 715. Davis's voluntary dismissal without prejudice was granted unconditionally. The district court therefore did not err by granting Davis's motion to reconsider its earlier partial grant of summary judgment.[2]
 
 IV
 
 16
 Davis argues that the district court erred by setting aside Defendants' default. The district court granted defendants' motion to set aside their default because "defendants have made a showing of good cause under Fed.R.Civ.P. 55(c) and applicable case law to warrant setting aside the clerk's default." The district court acted within its discretion to consider as good cause the explanation offered by Defendants: they had just changed attorneys, and each attorney assumed that the other would prepare and file the answer.
 
 V
 
 17
 Defendants next assert that the district court erred by failing to rule that Davis is barred from enforcing the contract due to California's broker-licensing scheme. A broker of business opportunities in California is required to hold a California real estate broker license. Cal.Bus. & Prof.Code § 10131(a) (West 1987) (one who "solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of ... a business opportunity" is a real estate broker); id. § 10130 (unlawful for any person to act as a real estate broker without obtaining a license). An unlicensed broker may not sue to obtain his fee. Id. § 10136.[3]
 
 
 18
 The district court correctly held that California's licensing scheme did not bar Davis's action because all of Davis's broker services were performed outside California. See Consul, Ltd. v. Solide Enters., 802 F.2d 1143, 1149-51 (9th Cir.1986); cf. Meisner v. Reliance Steel & Aluminum Co., 273 F.2d 49, 53 (9th Cir.1959) (Detroit lawyer who traveled personally to California was barred from collecting a broker's fee under California law).
 
 VI
 
 19
 Defendants also argue that the California statute of frauds, Cal.Civ.Code § 1624(a) (West Supp.1992), should have barred Davis from collecting his fee. To fall within the statute, performance of the contract within one year of the date of contracting must be completely foreclosed by the terms of the contract. " 'When a contract has been so far performed that nothing remains to be done but the payment of the consideration for the performance, the fact that the contract does not require the payment within a year furnishes no defense to an action for the price.' " Roberts v. Wachter, 231 P.2d 534, 540 (Cal.App.1951) (quoting Hellings v. Wright, 156 P. 365, 368 (Cal.App.1916)); see also 1 B.E. Witkin, Summary of California Law § 282 (9th ed. 1987) (California courts strictly interpret this rule, holding that "only those contracts which expressly preclude performance within a year are unenforceable.") (emphasis added). The district court correctly ruled that this contract was not within the statute of frauds.
 
 VII
 
 20
 Davis next makes a series of arguments that he is entitled to reform the jury's verdict as a matter of law. First, he argues that he was entitled, as a matter of law, to both a judgment of liability and an award of damages on the basis that he was a third-party beneficiary of the Kings contract. Since we have upheld the award of damages for breach of contract and Davis received full compensation for the breach via the jury verdict, this issue, as Davis concedes, is moot. Davis's complaint that the district refused his proffered verdict form which would have permitted the jury to articulate its findings more precisely is similarly moot.
 
 
 21
 Davis argues that he is entitled to judgment as a matter of law on his fraud claim. In his opening brief on cross-appeal, Davis cites testimony of Lukenbill out of context to the effect that Lukenbill never intended to pay Davis. This is an absurd argument since Lukenbill, of course, denied making a promise in the first place. Davis himself acknowledges Lukenbill's denial in his reply brief: "Plaintiff acknowledges that there was a conflict in the evidence as to whether or not a representation of payment was made by defendants."
 
 
 22
 Davis goes on to argue that because the jury found that Lukenbill had, in fact, made a promise of payment to Davis that Lukenbill must have committed fraud. This argument ignores the intent element of fraud, which is an intensely factual matter. The jury's verdict can be fairly read as finding that Lukenbill made a promise to Davis but did not do so with an intent to defraud. Davis's argument is meritless.
 
 
 23
 Davis's parallel argument concerning the covenant of good faith and fair dealing is similarly flawed, since the jury was required to find bad faith in order to hold for Davis on that claim. The jury could have found that while Lukenbill did make a contract with Davis, he did not deny its existence in bad faith. This argument, too, is meritless.
 
 VIII
 
 24
 Defendants argue that they were entitled to a setoff for the money paid to Davis by Karosen in settlement of the New York action. The district court found that defendants had not carried their burden of proof on their setoff claim. They should have pleaded the setoff as a counterclaim in their answer but they did not do so. Fed.R.Civ.P. 13; 3 James Wm. Moore & Richard D. Freer, Moore's Federal Practice p 13.02 (2d ed. 1991). After the verdict was entered, defendants submitted a bald claim of entitlement to the setoff without argument or evidence. Defendants do not argue that the district court abused its discretion by failing to provide them an opportunity to offer evidence, but proceed instead directly to the merits. The district court did not err by dismissing defendants' claim to a setoff raised for the first time, without any evidentiary support, on the eve of entry of judgment.
 
 IX
 
 25
 Defendants next argue that the district court erred by granting an award of prejudgment interest to Davis. Davis correctly points out that Defendants raise this argument for the first time on appeal. In their objections to judgment on a jury verdict, Defendants only raised an objection to the period of time that interest accrued. Defendants now argue that the district court was not empowered to award interest at all. Since defendants did not present this argument to the district court, we will not consider it. Whittaker Corp. v. Execuair Corp., 736 F.2d 1341, 1346 (9th Cir.1984) (court of appeals has discretion to hear issue raised for first time on appeal unless it would require the parties to develop new facts).
 
 X
 
 26
 Davis argues that the district court used an incorrect interest rate to calculate prejudgment interest. Davis first argues that the district court should have used the legal interest rate of New York or Missouri in calculating prejudgment interest. Since California substantive law is applicable to this action, this argument is meritless.
 
 
 27
 Davis relies on two completely unavailing sources to support his argument that the district court should have used a higher rate of interest under California law. First, he relies upon a statute that by its own terms does not apply to contracts entered into before January 1, 1986. See Cal.Civ.Code § 3289(b) (West Supp.1992). The contract Davis sued upon was entered into in 1983; section 3289, as revised, is therefore inapplicable.
 
 
 28
 Second, Davis cites to irrelevant dicta in Turner v. Japan Lines, Ltd., 702 F.2d 752 (9th Cir.1983). In Turner, we considered whether a statutory increase in the amount of postjudgment interest under Oregon law should be applied to a judgment entered before the effective date of the statutory amendment. Id. at 757-58. The court held that the intent of the Oregon law was that the rate of interest in effect on the day judgment is entered is to be applied until the judgment is paid, regardless of subsequent changes in the statutory interest rate. Id. at 758. In the footnote to which Davis cites, the court noted its disagreement with the Oregon law on policy grounds, writing that subsequent changes in interest rates should be applied to outstanding judgments because "changes in the statutory rate presumably reflect changes in the value of use of money in a dynamic market economy." Id. at 758 n. 9. All of this is irrelevant to California's statutory rate change, because the statute is facially inapplicable to the contract at hand. Thus, Davis's argument is patently meritless.
 
 XI
 
 29
 Defendants argue that the cumulative effect of the district court's asserted errors denied them due process of law. Defendants cite a criminal case, United States v. McLister, 608 F.2d 785 (9th Cir.1979), in favor of this ridiculous proposition. Their argument is meritless.
 
 XII
 
 30
 Defendants argue that the district court erred by disqualifying their attorney. Defendants could have appealed the disqualification order immediately after the district court entered it. Paul E. Iacono Structural Eng'r, Inc. v. Humphrey, 722 F.2d 435, 437 n. 2 (9th Cir.) (disqualification order is a final collateral order), cert. denied, 464 U.S. 851 (1983). Because Defendants failed to do so and have alleged no prejudice regarding the outcome of the trial, we decline to consider this issue.
 
 
 31
 AFFIRMED.
 
 
 
 *
 The Honorable C.A. Muecke, Senior United States District Judge for the District of Arizona, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 That rule provides:
 Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 Fed.R.Civ.P. 54(b) (emphasis added).
 
 
 [2]
 We see no reason to consider Defendants' argument that the trial court erred in granting Davis's motion for voluntary dismissal. At this stage of the proceedings, there is no harm to Defendants. Ultimately, the action was transferred back to California and Judge Garcia for all practical purposes ignored the Missouri complaint
 The only possible harm to Defendants is that Davis escaped having a final judgment entered against him and was later able to convince the district court to vacate its grant of partial summary judgment. But because defendants kept their counterclaims alive even after Davis dismissed his action, the district court would still have had power to revise its earlier order against Davis. Thus, this argument does not present a basis for reversal because Defendants have not been legally prejudiced.
 Similarly, Defendants' attack on the district court's failure to grant summary judgment is merely a rehash of its attack on the court's grant of Davis's motion to voluntarily dismiss. We therefore do not address it on the merits.
 
 
 [3]
 Section 10136 provides:
 No person engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this State shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose.