TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | |
|---|---|
| OPINION | : |
| | :      No. 94-909 |
| of | : |
| | :      March 16, 1995 |
| DANIEL E. LUNGREN | : |
| Attorney General | : |
| | : |
| GREGORY L. GONOT | : |
| Deputy Attorney General | : |
| | : |

_____

THE HONORABLE LEROY F. GREENE, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a licensed real estate broker acting in the capacity of a mortgage loan broker pay a commission to an unlicensed person for providing the name, telephone number, and address of a prospective borrower, when that information leads to concluding a loan transaction?

CONCLUSION

A licensed real estate broker acting in the capacity of a mortgage loan broker may pay a commission to an unlicensed person for providing the name, telephone number, and address of a prospective borrower, when that information leads to concluding a loan transaction, provided that the unlicensed person has not obtained the information in the course of soliciting borrowers or lenders on behalf of another or others.

ANALYSIS

The California Real Estate Law (Bus. & Prof. Code, §§ 10000-10580)[1] requires the licensing of real estate brokers by the Department of Real Estate. Section 10130 provides that "[i]t is

_____

[1] All section references hereinafter are to the Business and Professions Code.

1

unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or real estate salesman within this state without first obtaining a real estate license from the department."   A "real estate broker," as defined in section 10131, includes:

". . . a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others:

"(a)   Sells or offers to sell, buys or offers to buy, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of real property or a business opportunity.

"(b)   Leases or rents or offers to lease or rent, or places for rent, or solicits listings of places for rent, or solicits for prospective tenants, or negotiates the sale, purchase or exchange of leases on real property, or on a business opportunity, or collects rents from real property, or improvements thereon, or from business opportunities.

"(c)   Assists or offers to assist in filing an application for the purchase or lease of, or in locating or entering upon, lands owned by the state or federal government.

"(d)   Solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity.

"(e)   Sells or offers to sell, buys or offers to buy, or exchanges or offers to exchange a real property sales contract, or a promissory note secured directly or collaterally by a lien on real property or on a business opportunity, and performs services for the holders thereof."

A real estate broker may not compensate an unlicensed person to perform acts for which a license is required.   Section 10137 states in part:

"It is unlawful for any licensed real estate broker to employ or compensate, directly or indirectly, any person for performing any of the acts within the scope of this chapter who is not a licensed real estate broker, or a real estate salesman licensed under the broker employing or compensating him; provided, however, that a licensed real estate broker may pay a commission to a broker of another State."

We are asked to determine whether a real estate broker, acting as a mortgage broker in performing the services described in subdivisions (d) and (e) of section 10131, may pay a fee to an unlicensed person who provides "finder" information.   The role of the finder, as postulated in the question, would be to enable the broker to identify and contact persons who may be interested in obtaining a loan through a secured transaction.   The central issue is whether, in bringing together the

2

broker and the borrower in this fashion, the finder is performing an act for which a real estate license is required.   If so, the unlicensed finder may not be compensated by the broker.   (§ 10137.)

In California a "finder's exception," allowing an unlicensed person to be compensated for introducing parties to a real estate transaction, has been judicially sanctioned since 1923.   (See Note, *Contracts:   Applicability of Real Estate Brokers Act and Statute of Frauds to an Oral Agreement to Find a Purchaser of Real Property* (1956) 44 Cal.L.Rev. 413.)   As explained by the Supreme Court in *Tyrone* v. *Kelley* (1973) 9 Cal.3d 1:

> "Numerous cases have held that one who simply finds and introduces two parties to a real estate transaction need not be licensed as a real estate broker.   Such an intermediary or middleman is protected by the finder's exception to the real estate licensing laws, an exception first established in *Shaffer* v. *Beinhorn* (1923) 190 Cal. 569, 573-574.   In that case, this court held that a person who contracted to introduce a seller to a prospective purchaser did not act as a broker but as a finder.   Many subsequent cases have recognized the exception.   [Citations.]

> "The finder is a person whose employment is limited to bringing the parties together so that they may negotiate their own contract, and the distinction between the finder and the broker frequently turns upon whether the intermediary has been invested with authority or duties beyond merely bringing the parties together, usually the authority to participate in negotiations.   [Citations.]"

In *Tyrone*, the court determined that a 1959 change in the statutory language, adding to the definition of a real estate broker one who "solicits" borrowers or lenders, caused the "finder's exception" to be inapplicable to unlicensed persons who solicit borrowers if their fees are paid prior to the borrowers getting loans on their properties.   The court, however, refused to interpret the amendment as prohibiting solicitation activity when the finders are paid after the loans are obtained:

> "It is clear that the legislature did not intend by the 1959 amendment to section 10131 to eliminate entirely the finder's exception but rather intended to limit it in one respect not relevant here.   The 1959 amendment to section 10131 was made by section 4 of chapter 2117 of the 1959 statutes.   Section 14 of that chapter makes clear that the purpose of the enactment of the chapter was the licensing of `advance fee' operators who had `sought to shield their activities under the guise of operating as mere finders or locators. . . .'   The legislative statement of purpose in the section shows that the Legislature did not intend a departure from established principles relating to brokers and finders except as to the `advance fee' operators, and the reference in the section to `finders' reflects a legislative recognition that the finder's exception to the licensing law was recognized and continued with the exception of the `advance fee' operators."   (*Id*., at p. 9; fn. omitted.)

In 1984 the Legislature responded to the *Tyrone* decision by amending section 10131 to include the phrase "regardless of the form or time of payment" in the introductory clause.   (Stats. 1984, ch. 177, § 1.)   The purpose of the amendment was to eliminate any solicitation by a finder on behalf of

others whether paid before or after completion of the real estate transaction. The legislation was analyzed in a report of the Assembly Committee on Consumer Protection and Toxic Materials dated May 16, 1984, as follows:

> "Designed to overturn a state Supreme Court decision, *Tyrone* v. *Kelley*, which in effect held that a broker's license only was required of a person soliciting loans secured by real property if payment for services was in advance. This bill would have the effect of requiring a broker's license of some persons not now licensed -- those who delay acceptance of compensation until some future date or act. Department [of Real Estate] says recent months following the court's decision have shown evidence that some companies are starting solicitation programs with unlicensed personnel."

In a letter to the committee dated May 17, 1984, the sponsor of the legislation, the Department of Real Estate, stated in part:

> "The need to protect a consumer as a prospective party to a real property loan transaction begins at the time that the person is solicited to make a loan or to borrow funds. The need for consumer protection does not arise only when negotiations over the terms of the loan commence. The opportunities to deceive a prospective borrower or lender are greater during the act of soliciting than they are when the prospective party sits down to negotiate the terms of the loan if in fact there is any negotiation process involved. In the case of a prospective borrower particularly, the loan is likely to be offered on a take it or leave it basis, and without any discussion of the representations and promises that have been made by the loan solicitor.

> "On its face, the law now requires a real estate license of a person who solicits borrowers or lenders for real property loans. However, as a result of a California Supreme Court decision in 1973 entitled *Tyrone* v. *Kelley*, interpreting Section 10131, a real estate license is required by loan solicitors only if the solicitor collects an advance fee for his services. In practice, very few solicitors collect advance fees and therefore very few loan solicitors are now required to have a real estate license though a majority of institutional lenders and most loan brokers do require that their solicitors have real estate licenses.

> "Until recently, the Department of Real Estate did not perceive a need for legislative abrogation of the Supreme Court holding in the *Tyrone* case. In recent months, however, more and more unlicensed persons are acting as solicitors for lenders and for loan brokers. The Department knows of at least two companies that have instituted programs for organizing, training and compensating a staff of unlicensed solicitors to seek out prospective borrowers of loans to be secured by real property. These companies do not of course screen applicants for these solicitor positions to ascertain that they are knowledgeable, competent or responsible. Thus, neither borrowers nor lenders have the assurance that licensing will provide that solicitors are honest and truthful with basic knowledge of real estate and real property financing. Not only do these recent developments portend injury to the public being solicited, they

4

are also a form of unfair competition to those lenders and real estate brokers who regularly employ real estate licenses for loan solicitation."

Since the 1984 amendment of section 10131, the Department of Real Estate has interpreted the statutory language as precluding any solicitation for another or others by an unlicensed person of prospective sellers, purchasers, landlords, renters, borrowers or lenders for compensation. "Unless unreasonable or clearly contrary to the statutory language or purpose, the consistent construction of a statute by an agency charged with responsibility for its implementation is entitled to great deference. [Citation.]" (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 460.) The department's interpretation of section 10131 is in accord with the statute's language and purpose.

The finders exception is thus available in the usual situation of someone becoming aware of information without soliciting it on behalf of someone else in expectation of compensation. While *Tyrone* suggested that the finder's exception would in effect be eliminated if a finder could not solicit prospective borrowers or lenders (*Tyrone* v. *Kelley, supra,* 9 Cal.3d at 9, 11), the court itself pointed out a situation in which an unlicensed person could act as a finder without engaging in soliciting borrowers or lenders. (*Id*., at p. 9.)

Finally, we note that the finder's exception is not available where the finder does more than introduce the parties to each other; a finder may not become involved in the negotiations without being duly licensed. As stated in *Rees* v. *Department of Real Estate* (1977) 76 Cal.App.3d 286, 295:

> "Before the finder's exception may apply, it must appear that the `activity is limited to arranging an introduction [between the parties] . . .' (*Spielberg* v. *Granz* (1960) 285 Cal.App.2d 283, 290-291), and the services performed in bringing the parties together cannot involve `"any role in negotiating the price or any of the other terms of the transaction. . . ."' (*Evans* v. *Riverside Internat. Raceway* (1965) 237 Cal.App.2d 666, 676.) If the broker takes any part in the negotiations, no matter how slight, he is not a middleman but a broker. (*Rhode* v. *Batholomew*, 94 Cal.App. 272, 280.)"

"Whether a person acted as a finder or as a broker is a question of fact, requiring examination of his conduct after the introduction of the principals to the transaction." (*Preach* v. *Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1452; see also *Tenzer* v. *Superscope, Inc.* (1985) 39 Cal.3d 18, 31; *Lyons* v. *Stevenson* (1977) 65 Cal.App.3d 595, 605-606.) Here we have been given only that the finder has provided identification information to the broker; under such limited circumstances, the finder would not be taking part in the negotiations.

We conclude that a licensed real estate broker acting in the capacity of a mortgage loan broker may pay a commission to an unlicensed person for the name, telephone number, and address of a prospective borrower, when that information leads to concluding a loan transaction, provided that the person has not obtained the information in the course of soliciting borrowers or lenders on behalf of another or others.[2]

---

[2] If the transaction is subject to the federal Real Estate Settlement Procedures Act (12 U.S.C. § 2601), a different

* * * * *

---

conclusion may result, since in many instances the federal law prohibits what state law permits.  Congress has amended this legislation recently, and it is subject to administration and interpretation by the United States Department of Housing and Urban Development.  (See 24 C.F.R. § 3500.1.)  The application of federal statutes or implementing regulations to the question presented is beyond the scope of this opinion.